### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**MOUNT HOPE CHURCH,**
          Plaintiff,                   Dkt. No. 2009-CV-00427-RHB

v.                                Hon. ROBERT HOLMES BELL

**BASH BACK!, D-01**
**BASH BACK! LANSING, D-02**
**GINA ELEYNA WERTZ, D-03**
**KRISTY ELIZABETH BOUSQUET, D-04**
**AMY MICHELLE FIELD, D-05**
**JASON DAVID HATZ, D-06**
**CAILIN ELIZABETH MAJOR, D-07**
**WENDY RENAE DEBNAR, D-08**
**MICHELLE NICOLE TROUTMAN, D-09**
**SAMUEL D. KREUGER, D-10**
**NATHAN JAMES KELLER, D-11**
**ANTON BOLLEN, D-12**
**DEVIN SCOTT MERGET, D-13**
**DANIEL A. REGENSCHEIT, D-14**
**RYAN LEVITT, D-15**
**ALLISON MARGARET PENNINGS, D-16**
**JOHN DOES 1-20, D-17-36**
          Defendants

_____/

### ANSWER TO COMPLAINT OF DEFENDANTS:
### BASH BACK!, D-01
### BASH BACK! LANSING, D-02
### GINA ELEYNA WERTZ, D-03
### KRISTY ELIZABETH BOUSQUET, D-04
### AMY MICHELLE FIELD, D-05
### CAILIN ELIZABETH MAJOR, D-07
### WENDY RENAE DEBNAR, D-08
### MICHELLE NICOLE TROUTMAN, D-09
### SAMUEL D. KREUGER, D-10
### ANTON BOLLEN, D-12
### DEVIN SCOTT MERGET, D-13
### DANIEL A. REGENSCHEIT, D-14
### RYAN LEVITT, D-15
### ALLISON MARGARET PENNINGS, D-16
### JOHN DOES 1-20, D-17-36

_____/

1

PALMER & ASSOCIATES, P.C.
TRACIE DOMINIQUE PALMER (P 53555)
Attorney for Defendants D-01 to D-05; D-07 to D-10; D-12 to D-36
615 Griswold, Ste. 1225
Detroit, MI  48226
(313) 963-1100  (voice)
(313) 963-5221  (fax)
tpalmer@palmerlawpc.com
_____/

## ANSWER TO COMPLAINT

NOW COME the above-listed Defendants, D-01 to D-05; D-07 to D-10; D-12 to D-36,

by and through their Attorney TRACIE DOMINIQUE PALMER (P 53555), and for their

Answer to Plaintiff's Complaint state the following:

**1. This action arises from Defendants' illegal conduct on Church premises during the Church's Sunday morning services on November 9, 2008. Defendants intentionally acted and appeared in a threatening manner and physically obstructed not only traffic entering the Church parking lot, but access to the church building itself. Defendants' conduct caused Church members to be intimidated and interfered with in their exercise of the First Amendment right to religious freedom in a place of worship.**

ANSWER:  The above-listed Defendants respond: Denied as untrue.

**2. Defendants' threatening conduct violated the Church's civil rights under the federal Freedom of Access to Clinic Entrances Act ("FACE"), 18 U.S.C. § 248, which protects the exercise of the First Amendment right to religious freedom at a place of worship from intimidation or interference as result of either threat of force or physical obstruction.**

ANSWER: The above-listed Defendants respond: Denied as untrue.

**3. The Church seeks permanent injunctive relief and both compensatory and punitive damages, all of which it is authorized to receive under FACE.**

ANSWER: Conclusions of law and requests for relief, for which no answer is required.

## JURISDICTION AND VENUE

**4. The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331, as this civil action arises under the laws of the United States. The Court also has subject matter**

jurisdiction under 28 U.S.C. § 1343(a)(4), as this civil action seeks to recover damages and equitable relief under an Act of Congress providing for the protection of civil rights.

ANSWER: Conclusions of law, for which no answer is required.

**5. This Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367(a).**

ANSWER:  Conclusions of law, for which no answer is required.

**6. Venue is proper in the United States District Court for the Western District of Michigan under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred within the district.**

ANSWER: Conclusions of law, for which no answer is required.

**7. The Court has personal jurisdiction over the out-of-state defendants under the Michigan Long-Arm statute, MCL § 600.705(2).**
ANSWER: Conclusions of law, for which no answer is required.

## PARTIES

**8. Plaintiff Mount Hope Church and International Outreach Ministries is a taxexempt Michigan ecclesiastical corporation organized for religious, charitable, and educational purposes. The Church is located in Delta Township near Lansing, Michigan, and is authorized to bring suit under 18 U.S.C. § (c)(1)(A).**

ANSWER:  Neither admitted nor denied for lack of the requisite first-hand personal knowledge

sufficient to form an opinion as to the truth or falsity of said allegation.  The above-listed

Defendants thus leave Plaintiff to its proofs thereon.

**9. Defendant Bash Back! is the national organization of which Bash Back! Lansing is a chapter. On information and belief, Bash Back! is located in Chicago, Illinois. Bash Back! requires its members to agree to certain criteria for membership and provides a website to act as an information clearinghouse and recruitment tool for its chapters.**

ANSWER:  Denied as untrue that Bash Back! is a "national organization."  Denied as untrue that

Bash Back! Lansing is a "chapter" of a "national organization."  Denied as untrue that Bash

Back! is an entity that can be located in a single geographical location, and denied as untrue that

Bash Back! is located in Chicago, Illinois. Denied as untrue that Bash Back! is an entity that has

members, that it has criteria for membership, or that it has "chapters."

**10. Defendant Bash Back! Lansing is the local chapter of the national Bash Back! organization. On information and belief, Bash Back Lansing conspired with Bash Back! to both plan and execute the disruption at the Church. Bash Back! Lansing also requires its members to adhere to certain membership criteria and operates a webpage to act as a recruiting tool for its chapter.**

ANSWER: Denied as untrue. Defendants incorporate all previous answers by reference as if

fully set forth herein.

**11. Defendant Gina Eleyna Wertz, born 01/14/1987, is a resident of Evansville, Indiana, and participated with the other Defendants in the illegal conduct at the Church. Ms. Wertz also provided transportation for the Defendants to and from the Church, driving a vehicle with Indiana registration 505LKC.**

ANSWER: Admitted that Defendant Gina Eleyna Wertz is a resident of Indiana. Denied as

untrue that Defendant Wertz participated in any illegal conduct at the Church. Admitted that

Defendant Wertz has a vehicle registered in her name in Indiana. Remaining allegations

contained herein are neither admitted nor denied, Defendants leave Plaintiff to its proofs.

**12. Defendant Kristy Elizabeth Bousquet, born 08/12/1982, is a resident of Lansing, Michigan, and participated with the other Defendants in the illegal conduct at the Church.**

ANSWER: Denied as untrue that Defendant Kristy Elizabeth Bousquet is a resident of Lansing,

Michigan: she is a resident of Massachusettes. Denied as untrue that she participated in any

"illegal conduct." Denied as untrue that Defendant Bousquet was present at Plaintiff Mount

Hope Church at any time relevant to the allegations contained within the instant Complaint.

**13. Defendant Amy "Andy" Michelle Field, born 10/29/1983, is a resident of Lansing, Michigan, and participated with the other Defendants in the illegal conduct at the Church.**

ANSWER:  Admitted that Defendant Amy "Andy" Michelle Field is a resident of Lansing, Michigan.  Denied as untrue that Defendant Field participated in any "illegal conduct" at Plaintiff Mount Hope Church.

**14. Defendant Jason David Hatz, born 04/06/1987, is a resident of Lansing, Michigan, and participated with the other Defendants in the illegal conduct at the Church.**

ANSWER: The above-listed Defendants neither admit nor deny the allegations contained within paragraph 14 because they are without knowledge or information sufficient to form a belief as to the truth or falsity thereof, and therefore leave Plaintiff to its proofs.

**15. Defendant Cailin Elizabeth Major, born 06/17/1985, is a resident of Milwaukee, Wisconsin, and participated with the other Defendants in the illegal conduct at the Church.**

ANSWER:  Admitted that Defendant Major is a resident of Milwaukee, Wisconsin. Denied as untrue that Defendant Major participated in any "illegal conduct" at Plaintiff Mount Hope Church.

**16. Defendant Wendy Renae  Debnar, born 02/17/1985, is a resident of Lansing, Michigan, and participated with the other Defendants in the illegal conduct at the Church. She also provided transportation for the Defendants at to and from the Church, driving a vehicle with Michigan registration 90HGU.**

ANSWER:   Admitted that Defendant Debnar is a resident of Lansing, Michigan.  Denied as untrue that Defendant Debnar participated in any "illegal conduct" at Plaintiff Mount Hope Church.  Admitted that Defendant Debnar has driven a vehicle with the Michigan license plate containing the characters "90HGU."

**17. Defendant Michele "Tyler" Nicole Troutman, born 05/31/1984, is a resident of Lansing, Michigan, and participated with the other Defendants in the illegal conduct at the Church.**

ANSWER:  Denied as untrue that Defendant Troutman is a resident of Lansing, Michigan: they

are a resident of Grand Rapids, Michigan.  Denied as untrue that Defendant Troutman

participated in any "illegal conduct" at Plaintiff Mount Hope Church.

**18. Defendant Samuel D. Krueger, born 09/18/1989, is a resident of Milwaukee, Wisconsin, and participated with the other Defendants in the illegal conduct at the Church.**

ANSWER:  Admitted that Defendant Krueger is a resident of Wisconsin.  Denied as untrue that

Defendant Krueger participated in any "illegal conduct" at Plaintiff Mount Hope Church.

**19. Defendant Nathan James Keller, born 10/30/1989, is a resident of Okemos, Michigan, and participated with the other Defendants in the illegal conduct at the Church. He also provided transportation for the Defendants to and from the Church, driving a vehicle with Michigan registration 0CGT60.**

ANSWER:   The above-listed Defendants neither admit nor deny the allegations contained

within paragraph 14 because they are without knowledge or information sufficient to form a

belief as to the truth or falsity thereof, and therefore leave Plaintiff to its proofs.

**20. Defendant Anton Bollen, born 10/13/1984, is a resident of Lansing, Michigan and participated with the other Defendants in the illegal conduct at the Church. He also provided transportation for Defendants to and from the Church, driving a vehicle with Michigan registration BPD7482.**

ANSWER:  Denied as untrue that Defendant Bollen is a resident of Lansing, Michigan: they are

a resident of East Lansing, Michigan.  Denied as untrue that Defendant Bollen participated in

any "illegal conduct" at Mount Hope Church.  Admitted that Defendant Bollen has driven a

vehicle with Michigan registration "BPD7482."

**21. Defendant Devin Scott Merget, born 05/11/1990, is a resident of Slinger, Wisconsin, and participated with the other Defendants in the illegal conduct at the Church.**

ANSWER:  Admitted that Defendant Merget is a resident of Wisconsin.  Denied as untrue that

Defendant Merget participated in any "illegal conduct" at Mount Hope Church.

.

**22. Defendant Daniel A. Regenscheit is a resident of Chicago, Illinois, and used or allowed his vehicle, Illinois registration G696304, to be used for transportation of the Defendants to and from the Church and participated with the other Defendants in the illegal conduct at the Church.**

ANSWER:  Admitted that Defendant Regenscheit is a resident of Illinois and that he has a

vehicle registered in Illinois with plate number "G696304." Denied as untrue that Defendant

Regenscheit participated in any "illegal conduct" at Mount Hope Church.

**23. Defendant Allison Margaret Pennings is a resident of Lansing, Michigan, and participated with the other Defendants in the illegal conduct at the Church.**

ANSWER:  Admitted that Defendant Pennings is a resident of Lansing, Michigan.  Denied as

untrue that Defendant Pennings participated in any "illegal conduct" at Mount Hope Church.

**24. Defendants John Does 1-20 are alleged to have been involved in the advertising, planning, support, coordination, and execution of the event at the Church and will be specifically named as Defendants when their true identities are ascertained.**

ANSWER:  Defendants move to strike said allegation as it is overly broad and unduly vague.

Without waiving said objection, Defendants neither admit nor deny the allegations contained

herein for lack of the requisite first-hand personal knowledge sufficient to form an opinion as to

the truth or falsity of said allegations.  The above-listed Defendants thus leave Plaintiff to its

proofs thereon.

## "FACTS"

**25. Mount Hope Church of Lansing Michigan attracts roughly 2,000 people each Sunday to its services. Its 11:30 service is one of its most popular services, with over 700 people in attendance.**

ANSWER: Defendants neither admit nor deny the allegations contained herein for lack of the requisite first-hand personal knowledge sufficient to form an opinion as to the truth or falsity of said allegations. The above-listed Defendants thus leave Plaintiff to its proofs thereon.

**26. Each service includes religious teaching, prayer, and singing. Members and visitors attend these services in order to participate in those religious activities.**

ANSWER: Defendants neither admit nor deny the allegations contained herein for lack of the requisite first-hand personal knowledge sufficient to form an opinion as to the truth or falsity of said allegations. The above-listed Defendants thus leave Plaintiff to its proofs thereon.

**27. Bash Back! is a self-described "radical" organization of individuals with chapters nationwide.**

ANSWER: Defendants Bash Back!, D-01 and Bash Back! Lansing, D-02, deny as untrue that "they" are organizations: they are not persons, corporations, businesses, entities, unincorporated associations, nor any other form of structured organization recognized as being capable of being sued, pursuant to Michigan or Federal laws. There is no hierarchy of leadership for either named Defendant. Defendants D-01 and D-02 have asserted as an Affirmative Defense that pursuant to F.R.C.P. 17(b) these two "named" Defendants lack the capacity to be sued.

The remaining above-listed Defendants neither admit nor deny the allegations contained herein. The above-listed Defendants thus leave Plaintiff to its proofs thereon.

**28. Bash Back! mandates that all of its chapters agree to four points in order to become recognized. The membership agreement requires "[a] rejection of…all forms of State power," willingness to "[f]ight for liberation" and "[a]ctively oppose oppression," and recognition that a chapter cannot "solely condemn an action on the grounds that the State deems it to be illegal."**

ANSWER: Defendants neither admit nor deny the allegations contained herein, but leave Plaintiff to its proofs.

**29. Bash Back! runs a website, Bash Back! News, that is used to disseminate information nationwide and internationally about its chapters' activities.**

ANSWER: Admitted that there is a website in existence on the internet with the URL

"bashbacknews.worldpress.com" and that said website includes information posted by numerous

people related to the discussion of concepts, protests and political dialogue surrounding all forms

of issues related to sexuality, sexual and/or gender identity, sexual and/or gender orientation.

Denied as untrue that Defendant D-01 "runs a website. . ." Defendant D-01 incorporates all

previous answers by reference as if fully set forth herein.

**30. Bash Back! Lansing is a recognized chapter of Bash Back! in Lansing, Michigan. It operates a website to disseminate information about itself and to recruit others to its cause.**

ANSWER: Objection vague and overbroad as to what is meant by a "recognized chapter."

Without waiving said objection, Defendant D-02 Bash Back! Lansing incorporates all previous

answers by reference as if fully set forth herein. All above-listed Defendants neither admit nor

deny the allegations contained herein, but leave Plaintiff to its proofs.

**31. Bash Back! and Bash Back! Lansing encourage violent and militant behavior.**

ANSWER: Denied as untrue that Defendants D-01 and D-02 encourage violent behavior.

Objection that the allegation of "militant behavior" is vague and overbroad. Without waiving

said objection, Defendants incorporate all prior answers by reference as if fully set forth herein.

Defendants neither admit nor deny the allegations contained herein, but leave Plaintiff to its

proofs. Defendants note that Plaintiff has not made any allegations of any violent behavior

against any of the above-listed Defendants in the Complaint at issue.

**32. For example, Bash Back! Lansing's webpage states that "obviously we support**

violence," that "we want to tear this world…to itsy bitsy pieces," that "we want all phobes to have a real reason to fear us," and that "a militant reaction is… necessary" to achieve its ends.

ANSWER: Defendants incorporate all prior answers by reference as if fully set forth herein.

Defendants neither admit nor deny the allegations contained herein, but leave Plaintiff to its

proofs.

**33. Bash Back! Lansing's webpage has images demonstrating this support for violence, including artistic renderings of an assault rifle with the words "BashBackChi@Riseup.net" in the lower right-hand corner.**

ANSWER: Defendants incorporate all prior answers by reference as if fully set forth herein.

Defendants neither admit nor deny the allegations contained herein, but leave Plaintiff to its

proofs.

**34. Bash Back! Lansing also boasts that it has actually engaged in such behavior, stating that the group has been involved in "tire slashing and cop terrorizing" in the past.**

ANSWER: Defendants incorporate all prior answers by reference as if fully set forth herein.

Defendants neither admit nor deny the allegations contained herein, but leave Plaintiff to its

proofs.

**35. Using the Bash Back! News website and its own website, Bash Back! Lansing recruited individuals from Indiana, Illinois, Tennessee, and Wisconsin to join with local Michigan individuals in conducting its protest, infiltration, and disruption at the Church. Printouts of the recruitment advertisements on those websites are included as Exhibit 1.**

ANSWER: Defendants incorporate all prior answers by reference as if fully set forth herein.

Defendants neither admit nor deny the allegations contained herein, but leave Plaintiff to its

proofs.

**36. Defendants staged the protest, infiltration, and disruption at the Church on the morning of November 9, 2008.**

ANSWER: Objection, overly broad and unduly vague: which of the Fourteen (14) named Defendants and Twenty (20) "John Doe" Defendants does Plaintiff allege "staged" the activities of which it complains, and what does Plaintiff mean by the term "stage?" Defendants incorporate all prior answers by reference as if fully set forth herein. Defendants neither admit nor deny the allegations contained herein, but leave Plaintiff to its proofs.

**37. The protest, infiltration, and disruption was carefully organized and included two separate groups of protestors, some demonstrating outside the Church and some sneaking inside the Church to disrupt its services.**

ANSWER: Objection to the term "sneaking inside the Church." Plaintiffs admit in their own Complaint (paragraphs 25, 26) that the Church services, particularly the one in question, is open to all "visitors" and that, by their own estimate, "over 700 people" attend said services. Defendants incorporate all prior answers by reference as if fully set forth herein. Defendants neither admit nor deny the allegations contained herein, but leave Plaintiff to its proofs.

**38. The outside group consisted of about ten protestors who dressed in black with hooded attire and who covered their faces with bandanas.**

ANSWER: Defendants incorporate all prior answers by reference as if fully set forth herein. Defendants neither admit nor deny the allegations contained herein, but leave Plaintiff to its proofs.

**39. One of the protestors was wearing a skull mask that covered his or her entire face.**

ANSWER: Defendants incorporate all prior answers by reference as if fully set forth herein. Defendants neither admit nor deny the allegations contained herein, but leave Plaintiff to its proofs.

**40. According to the Defendants themselves, the attire was calculated to "look scary" and help create a "militant-looking presence outside" the Church. *See* Exhibit 1.**

ANSWER: Defendants incorporate all prior answers by reference as if fully set forth herein.

Defendants neither admit nor deny the allegations contained herein, but leave Plaintiff to its

proofs.

**41. The outside group conducted an "extremely loud and wildly offensive" demonstration immediately outside a main entrance to the Church building, holding up signs with Satanic symbols and messages, waiving an upside-down cross, and shouting on a bullhorn. *See* Exhibit 2, Defendants' press release, "Bash Back! Raises Hell at Anti-Queer Mega-Church."**

ANSWER: Defendants incorporate all prior answers by reference as if fully set forth herein.

Defendants neither admit nor deny the allegations contained herein, but leave Plaintiff to its

proofs.

**42. Several Church members' ingress and/or egress to the Church building was made difficult or impossible while this demonstration was taking place.**

ANSWER:  Denied as untrue.  Defendants further state that it is very apparent from the Plaintiff

Mount Hope Church's own website, the Church building itself is an enormous structure with

numerous entrance and exit doors surrounding the entire building.  It would be physically

impossible for the "about ten protestors" Plaintiff alleges were outside of the Church to make it

difficult, let alone impossible, for visitors to get in and/or out of the Church building.

**43. One Church member who was trying to exit the Church was unable to do so because the outside group stood only about five feet from the doors at one point and because their behavior and attire made him fear they might be violent.**

ANSWER:  Denied as untrue.  Plaintiff's allegation in paragraph 43 is preposterous given the

physical structure of the enormous Church compound with its multiple doors.  Plaintiff admits in

12

its Complaint that there is more than one main entrance/exit to the Church when it stated that the

demonstration was "immediately outside *a main entrance* to the Church building," in paragraph

41 (*Emphasis added*).  Defendants incorporate all prior answers by reference as if fully set forth

herein.

**44. Upon request by Pastor Scott Thompson of the Church, the outside Defendants moved to the entrance of the Church property and resumed their demonstration by marching back and forth across the Church driveway.**

ANSWER:  Denied as untrue.  Defendants incorporate all prior answers by reference as if fully

set forth herein.

**45. Pastor Thompson observed Defendants blocking or hindering seven or eight vehicles from entering the Church during Defendants' demonstration there, which he is recorded stating in a 911 call to the police while the outside protest was ongoing.**

ANSWER:  Denied as untrue that any of the above-listed Defendants were "blocking or

hindering seven or eight vehicles from entering the Church." Neither admitted nor denied as to

what Pastor Thompson may have told the 911 operator when he allegedly placed his call, for

lack of the requisite first-hand personal knowledge. Defendants leave Plaintiff to its proofs.

**46. Pastor Thompson reported Defendants' blocking to the police, in part, because access to the Church comes from a major five-lane road and Defendants' physical obstruction of the Church entrance was preventing vehicles from safely and quickly merging from the highway onto the Church property.**

ANSWER:  Denied as untrue that any of the Defendants created any sort of "physical

obstruction of the Church entrance [that] was preventing vehicles from safely and quickly

merging from the highway onto the Church property." Plaintiff's allegations in this paragraph

not only are untrue, but additionally contradict their previous allegations, in which they claim

that "about ten protestors" were outside of the Church (paragraph 38), and that these protestors

13

were "immediately outside a main entrance to the Church building," (paragraph 41), not near the driveway or highway.

**47. One Church member who had to drive through the Defendants' demonstration complained to Church security that the Defendants were making access to the Church dangerous and difficult.**

ANSWER:  Denied as untrue.  Defendants incorporate all previous answers by reference as if fully set forth herein.

**48. A Church member also reported that he was fearful that he would be hit by traffic because the protestor's blocking forced him to keep his vehicle in the middle of the road, vulnerable to fast-moving traffic. Finally, he was able to slowly drive forward to move protestors out of the way and get into the church parking lot.**

ANSWER:   Denied as untrue.  Defendants incorporate all previous answers by reference as if fully set forth herein.

**49. Defendants Cailin Elizabeth Major, Wendie Renae Debnar, Michele Nicole Troutman, Samuel D. Krueger, Nathan James Keller, Anton Bollen, and Devin Scott Merget have all been identified by police as being a part of this demonstration outside the Church.**

ANSWER:  Admitted that Defendants Major D-07, Debnar D-08, Troutman D-09, Krueger D-10, Bollen D-12, and Merget D13, were present outside of Plaintiff Mount Hope Church on November 9, 2008.  Defendants further state that absolutely no arrests were made, no tickets or citations were issued, and no criminal charges were brought as a result of the complained-of event.

**50. Part of the purpose of this demonstration was to act as a diversion, drawing the Church's security team out of the Church sanctuary. *See* Ex. 2.**

ANSWER:  Neither admitted nor denied, Defendants leave Plaintiff to its proofs.

**51. Meanwhile, a group of about ten protestors had already entered the church prior to the commencement of the outside protest.**

ANSWER:  Neither admitted nor denied, Defendants leave Plaintiff to its proofs.  Defendants

further observe that this allegation, taken in combination with the allegations contained in

paragraph 38 of Plaintiff's Complaint, that there were only ten protestors outside of the church as

well.  Query: since Plaintiff asserts in their factual allegations that only "about" twenty (20)

protestors were involved, why has it brought a lawsuit against Fourteen (14) named individuals

plus an additional twenty (20) "John Doe" unidentified defendants?

**52. This inside group was dressed in their "Sunday-best" to allow them to "blend with" the regular churchgoers and "infiltrate" the service. *See* Ex. 1.**

ANSWER:  Neither admitted nor denied, Defendants leave Plaintiff to its proofs.

**53. Using cell phones and text messaging to coordinate their activities, about 40 minutes into the service the outside group signaled the inside group that "the [Church's security] guards had been lured outside," at which point the inside group "sprang into action." *See* Ex. 2.**

ANSWER:  Neither admitted nor denied, Defendants leave Plaintiff to its proofs.

**54. The group stood up in the middle of the service, "began screaming loudly" and threw "over a thousand fliers" into the stunned congregation. *See* Ex. 2.**

ANSWER:  Neither admitted nor denied, Defendants leave Plaintiff to its proofs.  Defendants

note, however, that the complained-of actions alleged in the instant paragraph are all non-violent,

non-threatening, and non-intimidating in nature.  The allegations contained in the instant

paragraph demonstrate an exercise of freedom of speech as protected by the First Amendment to

the United States Constitution. Given that the congregation included "over 700 people" on the

date alleged (Plaintiff's Complaint, paragraph 25), and the protestors inside allegedly numbered

"about ten" (Plaintiff's Complaint, paragraph 51), it is difficult to fathom how the actions alleged

in the instant paragraph could have been interpreted to be threatening or intimidating to the "stunned" congregation.

**55.  Two female members of the group, one of whom has been identified as Defendant Gina Wertz, went to the front of the sanctuary and began kissing each other near the podium.**

ANSWER:  Defendant Wertz D-03 denies as untrue the allegation that they "went to the front of the sanctuary" inside Mount Hope Church and began kissing anyone.  All Defendants neither admit nor deny the allegations contained within this paragraph, and Defendants leave Plaintiff to its proofs.  Defendants note, however, that the complained-of actions alleged in the instant paragraph are all non-violent, non-threatening, and non-intimidating in nature.  The allegations contained in the instant paragraph demonstrate an exercise of freedom of speech as protected by the First Amendment to the United States Constitution. Given that the congregation included "over 700 people" on the date alleged (Plaintiff's Complaint, paragraph 25), and the protestors kissing in front of the congregation numbered two (2), it is difficult to fathom how the actions alleged in the instant paragraph could have been interpreted to be threatening or intimidating to the congregation.

**56. A portion of the inside group had hidden in a closed-off balcony of the sanctuary and remained hidden there until hearing their screaming comrades initiating the inside protest. At that point, they loudly threw open a partitioning curtain at the edge of the balcony and hung a large sign from the balcony that read "IT'S OKAY TO BE GAY! BASH BACK!."**

ANSWER: Objection, vague and overbroad as to what Defendants and how many are alleged to have committed the behavior alleged in the instant paragraph.  Without waiving said objections, Defendants neither admit nor deny the allegations contained within this paragraph, and Defendants leave Plaintiff to its proofs.  Defendants note, however, that the complained-of

actions alleged in the instant paragraph are all non-violent, non-threatening, and non-intimidating in nature. The allegations contained in the instant paragraph demonstrate an exercise of freedom of speech as protected by the First Amendment to the United States Constitution.

**57. The majority of the inside group then ran from the building, pulling two fire alarms on their way out.**

ANSWER: Denied as untrue.

**58. A few Defendants remained hidden in the congregation to observe the Church members' reactions.**

ANSWER: Denied as untrue.

**59. Several Church members were terrorized by the Defendants' conduct inside the church.**

ANSWER: Objection, vague as to what is meant by "terrorized." Without waiving said objection, Defendants can neither admit nor deny the instant allegation for lack of the required first-hand personal knowledge about the internal feelings of "several" unidentified Church members, and thus leave Plaintiff to its proofs. Defendants question the veracity of this allegation, however, when the only alleged overt acts set forth in Plaintiff's Complaint are that people yelled, flyers were tossed into the air, two people kissed, and a banner was displayed: all non-violent, non-intimidating actions.

**60. At least one church member reported to staff that he and his wife were concerned for his family's safety because the radical nature of the demonstrators and the unabashed nature of their rhetoric. This member thought that he was going to have to defend his family and others who may be harmed physically.**

ANSWER: Defendants can neither admit nor deny the instant allegation for lack of the required first-hand personal knowledge about the internal feelings of "at least one" unidentified church member, and thus leave Plaintiff to its proofs. Defendants question the veracity (and rationality)

of this allegation, however, when there is no indication in any of the other "factual" allegations contained in Plaintiff's complaint that there were any threats made, let alone threats of physical harm.

**61. One of the church staff members, David Williams, Jr., who was in attendance within the sanctuary of the church when the disturbance erupted, thought immediately of recent news coverage of a shooting at a church in Colorado. He was afraid that the protestors meant to harm church members and staff, and that the disturbance would turn violent.**

ANSWER:  Defendants can neither admit nor deny the instant allegation for lack of the required first-hand personal knowledge about the internal feelings of "one of the church staff members," Mr. Williams, and thus leave Plaintiff to its proofs.  Defendants question the veracity (and rationality) of this allegation, however, when there is absolutely no indication in any of the other "factual" allegations contained in Plaintiff's complaint that there were any weapons of any sort brandished, there were any sort of threats made, or that any of things said or done by the alleged demonstrators was violent in any manner whatsoever.

**62. A mother feared for her special-needs child and so immediately went to check on him after the initial protest in the sanctuary. While her son was unharmed, she became so "overcome with emotion" that she "could no longer speak" and could not return to the service. The protest has left her feeling afraid and makes her think twice about whether to return to the Church in the future.**

ANSWER: Defendants can neither admit nor deny the instant allegation for lack of the required first-hand personal knowledge about the internal feelings of "a mother," who apparently attended the church that morning, and thus leave Plaintiff to its proofs.  Defendants question the veracity (and rationality) of this allegation, however, when there is absolutely no indication in this, or any of the other "factual" allegations contained in Plaintiff's complaint, that any of the action or speech was directed at this unidentified "mother" (or any one particular person, for that matter).

18

Plaintiff's complaint is clear in its allegations that there were very few protestors ("about ten" inside and "about ten" outside), and over 700 members of the congregation.  Plaintiff's complaint is also clear that there were two isolated areas of protesting: one inside the sanctuary, and one outside the Church on the sidewalk.

**63. In public statements after its conduct on November 9, Bash Back! Lansing has described the Church as a "personal enemy of Bash Back" with whom it was "angry" and against who it would "fight back." *See* Exhibit 3, Defendant Bash Back! Lansing's press release, "Why Mount Hope Church?? and press linx [sic]."**

ANSWER:  Defendants neither admit nor deny these allegations, but leave Plaintiff to its proofs. Defendants note, however, that this allegation contains alleged public statements that occurred after the alleged offensive conduct, that necessarily cannot be used as a basis for the alleged feelings of intimidation and/or fear that allegedly three (3) of the "over 700" church members felt during or immediately after the protest. (Plaintiff's Complaint, paragraphs 25, 60, 61 and 62).

**64. Defendant Amy "Andy" Field, in a radio interview, when asked whether she and the other Defendants' conduct violated the Church's civil rights, stated "I'm not concerned with their civil rights." *See* Exhibit 4, transcript of Defendant Field's radio interview.**

ANSWER:  Defendant Field D-05 admits that she did a lengthy radio interview following the event, and that the recording of said interview speaks for itself.  Neither admitted nor denied as to the accuracy of the transcript prepared by Plaintiff and attached to its complaint as Exhibit 4. All remaining Defendants neither admit nor deny the allegations contained within this paragraph, but leave Plaintiff to its proofs.

**65. Defendant Field further stated that one of the purposes of Bash Back!'s actions was to "inspire other people" to conduct similar protests in the future. *See* Ex. 4.**

ANSWER: Defendant Field D-05 admits that she did a lengthy radio interview following the event, and that the recording of said interview speaks for itself. Neither admitted nor denied as to the accuracy of the transcript prepared by Plaintiff and attached to its complaint as Exhibit 4. All remaining Defendants neither admit nor deny the allegations contained within this paragraph, but leave Plaintiff to its proofs

**66. This purpose of Bash Back!'s has been realized, as at least two other attacks on churches have been either made or supported by Bash Back! chapters and have been both publicized and endorsed on Bash Back! News.**

ANSWER: Neither admitted nor denied, Defendants leave Plaintiff to its proofs. All of the above-listed Defendants state that none of them were involved in any of the other church actions alleged by Plaintiff in the instant Complaint.

**67. On November 17, 2008, the Bash Back! Olympia chapter vandalized a church building in Washington, rendering the doors inoperable by gluing the locks and spraypainting the exterior of the church. Their press release, posted on Bash Back! News, says that this church, a member of the Church of Jesus Christ of Latter Day Saints, needed to be "confronted, attacked, subverted and destroyed" and that Bash Back!'s actions were "a warning to be Mormon church" to "dissolve completely or be destroyed." *See* Exhibit 5, "Bash Back! Olympia Trashes Mormon Church."**

ANSWER: Objection, irrelevant to the allegations complained of in the instant complaint. Without waiving said objection, Defendants neither admit nor deny these allegations, for lack of the requisite first-hand personal knowledge. Defendants leave Plaintiff to its proofs. Defendants further state that this alleged "example" given by Plaintiff occurred after the alleged events at Mount Hope Church, and thus necessarily could not have been known to any of the three (3) out of the "over 700" church members at the time they were somehow placed in fear by this non-violent protest on November 9, 2009.

**68. On April 28, 2009, homosexual protestors disrupted the services of the Park Street Church in Boston, Massachusetts in a manner similar to the Mount Hope Church disruption. Protestors outside the church loudly decried the church's meeting, at one point moving into an historic cemetery next to the church to conduct their protest, with one member putting a bullhorn against church windows to create a harsh shrieking sound. Then, as described on the Bash Back! News website, protestors who had entered the church interrupted the service on two occasions, once with shouted statements and once when two female members declared themselves to be lesbians and embraced each other in the middle of the church. *See* Exhibit 6, "Boston Bashes Back Against Exodus."**

ANSWER:  Objection, irrelevant to the allegations complained of in the instant complaint.

Without waiving said objection, Defendants neither admit nor deny these allegations, for lack of

the requisite first-hand personal knowledge.  Defendants leave Plaintiff to its proofs. Defendants

further state that this alleged "example" given by Plaintiff occurred after the alleged events at

Mount Hope Church, and thus necessarily could not have been known to any of the three (3) out

of the "over 700" church members at the time they were somehow placed in fear by this non-

violent protest on November 9, 2009.

<u>FIRST CAUSE OF ACTION</u>
<u>VIOLATION OF 18 U.S.C. § 248</u>
<u>PHYSICAL OBSTRUCTION TO A PLACE OF WORSHIP</u>

**69. The Church hereby incorporates by reference all foregoing allegations as if set forth fully herein.**

ANSWER:  Defendants hereby incorporate by reference all of their previous answers as if fully

set forth herein.

**70. FACE prohibits intentional physical obstruction that interferes with persons exercising their First Amendment right to freedom of religion at a place of worship.**

ANSWER:  Interpretation of law, no response necessary.

**71. Defendants Bash Back! and Bash Back! Lansing founded organizations that encourage physical obstruction of people and events that they oppose.**

ANSWER:  Denied as untrue. Defendants hereby incorporate by reference all of their previous

answers as if fully set forth herein.

**72. Further, Defendants Bash Back! and Bash Back! Lansing actively recruited individuals to carry out physical obstruction at the Church.**

ANSWER:  Denied as untrue that there was any "physical obstruction" carried out at the Church

on the date alleged by Plaintiffs.  As to the remaining allegations contained within this

paragraph, Defendants neither admit nor deny them, but leave Plaintiff to its proofs.  Defendants

hereby incorporate by reference all of their previous answers as if fully set forth herein.

**73. Individual Defendants at the Church, acting on the instigation of Bash Back! and Bash Back! Lansing, physically obstructed access to the Church in two separate ways.**

ANSWER:  Denied as untrue.  Defendants hereby incorporate by reference all of their previous

answers as if fully set forth herein.

**74. First, individual Defendants physically obstructed access to the Church building itself by conducting a threatening demonstration in close proximity to the Church entrance.**

ANSWER:  Denied as untrue that Defendants physically obstructed access to the Church

building at any time during the protest.  Denied as untrue that Defendants conducted a

"threatening demonstration in close proximity to the Church entrance."  Defendants hereby

incorporate by reference all of their previous answers as if fully set forth herein.

**75. Defendants' behavior and location rendered ingress and egress to the Church building through the Church's main entrance unreasonably difficult or impossible, preventing or hindering Church members from being able to enter or exit the building for several minutes.**

ANSWER: Denied as untrue. Defendants hereby incorporate by reference all of their previous answers as if fully set forth herein.

**76. Second, individual Defendants physically obstructed access to the Church parking lot marching back and forth across the driveway entrance.**

ANSWER: Denied as untrue. Defendants hereby incorporate by reference all of their previous answers as if fully set forth herein.

**77. Defendants' conduct rendered impassable ingress and egress to the church where people were lawfully exercising or seeking to exercise the First Amendment right to religious freedom at a place of worship.**

ANSWER: Denied as untrue. Defendants hereby incorporate by reference all of their previous answers as if fully set forth herein.

**78. Defendants' rendered passage to and/or from a place of worship unreasonably difficult or hazardous.**

ANSWER: Denied as untrue. Defendants hereby incorporate by reference all of their previous answers as if fully set forth herein.

**79. As such, Defendants' actions violated FACE's protection against physical obstruction that interferes with access to a place of religious worship.**

ANSWER: Denied as untrue. Defendants hereby incorporate by reference all of their previous answers as if fully set forth herein.

**80. Defendants are jointly and severely liable for these actions.**

ANSWER: Interpretation of law, no response necessary.

**SECOND CAUSE OF ACTION**
**VIOLATION OF 18 U.S.C. § 248**
**INTIMIDATION AT A PLACE OF WORSHIP**

**81. The Church hereby incorporates by reference all foregoing allegations as if set forth fully herein.**

ANSWER:  Defendants hereby incorporate by reference all of their previous answers as if fully

set forth herein.

**82. FACE prohibits using threat of force to intentionally intimidate persons accessing a place of worship. Intimidate "means to place a person in reasonable apprehension of bodily harm to him-or herself or to another." 18 U.S.C. § 248(e)(3).**

ANSWER:   Interpretation of law, no response necessary.

**83. Defendants Bash Back! and Bash Back! Lansing actively recruited individuals nationwide to engage in a threatening, "militant" demonstration at the Church, instructing participants to wear "black and have a mask" in order to "look scary."**

ANSWER:  Defendants Bash Back! D-01, and Bash Back! Lansing D-02, incorporate by

reference their continuing affirmative defense that they are not entities capable of being sued.

Denied as untrue that the demonstration was threatening.  Defendants neither admit nor deny the

remaining allegations in this paragraph, but leave Plaintiff to its proofs.  Defendants hereby

incorporate by reference all of their previous answers as if fully set forth herein.

**84. Defendants Bash Back! and Bash Back! Lansing also organized the "infiltration" of the Church sanctuary by disguised protest members, providing instructions on how to "blend with" the Church membership to avoid detection. Exhibits 2,4.**

ANSWER:  Defendants Bash Back! D-01, and Bash Back! Lansing D-02, incorporate by

reference their continuing affirmative defense that they are not entities capable of being sued.

Defendants neither admit nor deny the remaining allegations in this paragraph, but leave Plaintiff

to its proofs.  Defendants hereby incorporate by reference all of their previous answers as if fully

set forth herein.

**85. Individual Defendants in the outside group intentionally wore frightening, identity hiding attire, held signs and symbols known to be associated with violence, and conducted an "extremely loud and wildly offensive" demonstration on Church premises. Exhibit 2.**

ANSWER:  Defendants neither admit nor deny the allegations in this paragraph, but leave

Plaintiff to its proofs.  Defendants hereby incorporate by reference all of their previous answers

as if fully set forth herein.

**86. Their appearance and conduct was intended to be intimidating and had its intended effect.**

ANSWER:  Denied as untrue.

**87. Individual Defendants in the inside group coordinated their activities with the outside group to occur at a time when Church security would not be in the Church sanctuary.**

ANSWER: Defendants neither admit nor deny the allegations in this paragraph, but leave

Plaintiff to its proofs.  Defendants hereby incorporate by reference all of their previous answers

as if fully set forth herein.

**88. Defendants in the inside group initiated their activity by bursting up from their seats with simultaneous loud screaming, continued it by hurling paper at the startled congregation and engaging in offensive acts in front of the Church, and finished it by hanging a large banner from a restricted area—with the words "BASH BACK!" written on the banner.**

ANSWER:  Defendants neither admit nor deny the allegations in this paragraph, but leave

Plaintiff to its proofs.  Defendants hereby incorporate by reference all of their previous answers

as if fully set forth herein.

**89. The intentionally threatening actions of the individual Defendants left Church members feeling terrified, reasonably fearing and being in apprehension of bodily harm to themselves and their families. Several Church members have reported to church staff that they feel unsafe or insecure in returning to the Church.**

ANSWER: Denied as untrue that any individual Defendants were "intentionally threatening" in any manner. None of the "factual" allegations contained within Plaintiff's Complaint support that any of the overt actions by any individual Defendant was threatening in any manner. According to Plaintiff's "factual" allegations, the "several church members" were only three (3) out of "over 700," and one of those three works for Plaintiff (Mr. Williams is identified as a church staff member). Defendants neither admit nor deny the allegations in this paragraph, for lack of the requisite first-hand personal knowledge of the internal feelings of the three church members, but leave Plaintiff to its proofs. Defendants hereby incorporate by reference all of their previous answers as if fully set forth herein.

**90. As such, Defendants' conduct violated FACE's prohibition against force and threats of force that intimidate persons exercising their First Amendment right to religious freedom at a place of religious worship.**

ANSWER: Denied as untrue. Conclusion of law, no response necessary.

**91. Defendants are jointly and severely liable for these actions.**

ANSWER: Interpretation of law, no response necessary.

**THIRD CAUSE OF ACTION**
**TRESPASS TO PROPERTY**

**80. [sic] (92) The Church hereby incorporates by reference all foregoing allegations as if set forth fully herein.**

ANSWER: Defendants hereby incorporate by reference all of their previous answers as if fully set forth herein.

**81. [sic] (93) Defendants committed an unauthorized intrusion upon the private premises of the Church by invading the inside of the Church building, and by congregating outside the front doors of the Church building.**

ANSWER:  Objection, compound allegation.  Without waiving said objection, Defendants answer that the allegations contained in the instant paragraph are denied as untrue, and the conclusions of law based thereon on just plain wrong.  Plaintiff Church has admitted in this Complaint that the services of the Church are <u>not</u> private or closed:  paragraph 25 boasts that Plaintiff Church "attracts roughly 2,000 people each Sunday to its services," and that "members and visitors attend these services."  Plaintiff's website repeatedly invites the general public, literally over the entire globe, to attend its services.  Plaintiff's representatives and lawyer repeatedly have stated through the media that Mount Hope Church is a "church of inclusion" that is open to everyone.

**82. [sic] (94) The Church has the right to exclusive possession of its land. Defendants' intrusion is a trespass under Michigan common law. *Adams v. Cleveland-Cliffs Iron Co.*, 237 Mich. App. 51, 60 (1999).**

ANSWER:  Denied as untrue that Defendants' presence on Church property constitutes a common-law trespass under Michigan law.  Contrary to Plaintiff's insinuation, nothing allegedly done by Defendants, as set forth in this Complaint, affected Plaintiff church's "right to exclusive possession of its land."  The fact that Plaintiff Church admittedly operates a public building in which it encourages visitors belies its legal conclusion that any of the Defendants committed trespass in this situation.  Defendants hereby incorporate by reference all of their previous answers as if fully set forth herein.

**83. [sic] (95) Defendants also damaged property in the commission of their trespass when they pulled fire alarms upon exiting the Church building.**

27

ANSWER: Denied as untrue that any Defendants pulled any fire alarm(s) at the Church at any time. Even *assuming arguendo* that the allegation that fire alarms were pulled by anyone, this act does not equate to "damaged property." There have been no "factual" allegations set forth in Plaintiff's complaint that any actual damage to any Church property occurred during the event of November 9, 2008.

**84. [sic] (96) Defendants are jointly and severely liable for these actions.**

ANSWER: Conclusion of law, no response necessary.

**PRAYER FOR RELIEF**

ANSWER: Request for relief, no response necessary. Defendants incorporate by reference all of their previous answers as if fully set forth herein, and assert that Plaintiff is not entitled to any of the requested relief.

**WHEREFORE**, the above-listed Defendants respectfully request that this Honorable Court dismiss Plaintiff's Complaint in its entirety prior to trial, hold as a matter of law that Plaintiff's Complaint fails to state a claim upon which relief can be granted, and GRANT the above-listed Defendants their costs and attorney fees so wrongfully incurred by the necessity of defending the instant meritless legal action.

Respectfully submitted,
*/s/ Tracie Dominique Palmer*
TRACIE DOMINIQUE PALMER (P 53555)
PALMER & ASSOCIATES, P.C.
Attorney for listed Defendants
615 Griswold, Ste. 1225
Detroit, MI 48226
(313) 963-1100 (voice)
(313) 963-5221 (fax)
tpalmer@palmerlawpc.com

## JURY DEMAND

All above-listed Defendants hereby demand a trial by jury as to all genuine material issues of fact, the relief requested by Plaintiff, and all other appropriate issues presented by the instant case.

Respectfully submitted,
*/s/ Tracie Dominique Palmer*
TRACIE DOMINIQUE PALMER (P 53555)
PALMER & ASSOCIATES, P.C.
Attorney for listed Defendants
615 Griswold, Ste. 1225
Detroit, MI  48226
(313) 963-1100  (voice)
(313) 963-5221  (fax)
tpalmer@palmerlawpc.com

## CERTIFICATE OF SERVICE

I state that on this date I filed the above-annexed document using the W.D. Michigan CM/ECF system which shall cause electronic notice of said filing to be served upon counsel of record for Plaintiff, and all other attorneys and/or parties of record.

Respectfully submitted,
*/s/ Tracie Dominique Palmer*
TRACIE DOMINIQUE PALMER (P 53555)
PALMER & ASSOCIATES, P.C.
Attorney for listed Defendants
615 Griswold, Ste. 1225
Detroit, MI  48226
(313) 963-1100  (voice)
(313) 963-5221  (fax)
tpalmer@palmerlawpc.com