**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**MOUNT HOPE CHURCH,**
        Plaintiff,                                  Dkt. No. 2009-CV-00427-RHB

v.                                                       Hon. ROBERT HOLMES BELL

**BASH BACK!, D-01**
**BASH BACK! LANSING, D-02**
**GINA ELEYNA WERTZ, D-03**
**KRISTY ELIZABETH BOUSQUET, D-04**
**AMY MICHELLE FIELD, D-05**
**JASON DAVID HATZ, D-06**
**CAILIN ELIZABETH MAJOR, D-07**
**WENDY RENAE DEBNAR, D-08**
**MICHELLE NICOLE TROUTMAN, D-09**
**SAMUEL D. KREUGER, D-10**
**NATHAN JAMES KELLER, D-11**
**ANTON BOLLEN, D-12**
**DEVIN SCOTT MERGET, D-13**
**DANIEL A. REGENSCHEIT, D-14**
**RYAN LEVITT, D-15**
**ALLISON MARGARET PENNINGS, D-16**
**JOHN DOES 1-20, D-17-36**
        Defendants
_____/

**<u>DEFENDANTS' D-01 TO D-05, D-07 TO D-10, and D-12 TO D-36</u>**
**<u>MOTION FOR SUMMARY JUDGMENT/DISPOSITION</u>**
**<u>and BRIEF IN SUPPORT THEREOF</u>**
_____/

PALMER & ASSOCIATES, P.C.
TRACIE DOMINIQUE PALMER (P 53555)
Attorney for Defendants D-01 to D-05; D-07 to D-10; D-12 to D-36
615 Griswold, Ste. 1225
Detroit, MI 48226
(313) 963-1100 (voice)
(313) 963-5221 (fax)
tpalmer@palmerlawpc.com
_____/

1

# DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/DISPOSITION

NOW COME Defendants D-01 to D-05; D-07 to D-10; and D-12 to D-36, by and through their attorney TRACIE DOMINIQUE PALMER (P 53555), and for their Motion for Summary Disposition state the following:

1. This Court must grant Summary Judgment and Dismiss Plaintiff's First Cause of Action alleging "Violation of 18 U.S.C. §248, physical obstruction to a place of worship," pursuant to F.R.C.P. 56(b), for failure to state a claim upon which relief can be granted, pursuant to F.R.C.P. 12(b)(1) and 12(b)(6).

2. This Court must grant Summary Judgment and Dismiss Plaintiff's Second Cause of Action alleging "Violation of 18 U.S.C. §248, intimidation at a place of worship," pursuant to F.R.C.P. 56(b), for failure to state a claim upon which relief can be granted, pursuant to F.R.C.P. 12(b)(1) and 12(b)(6).

3. This Court must grant Summary Disposition under Michigan Court Rules 2.116(C)(8) and 2.116(C)(10) of Plaintiff's Third Cause of Action alleging "Trespass to Property" under Michigan common law, for failure to state a claim upon which relief can be granted.

WHEREFORE, the above-listed Defendants respectfully request that this Honorable Court GRANT their Motion for Summary Disposition in its entirety, as to all three (3) counts of Plaintiff's Complaint, and award Defendants their costs and attorney fees so wrongfully incurred by the filing of this meritless lawsuit.

# BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY DISPOSITION

This Court should grant summary judgment/disposition of all three (3) claims raised in Plaintiff's Complaint. As to the first two causes of action alleged by Plaintiff based upon Federal statute 18 U.S.C. §248, summary judgment is appropriate pursuant to F.R.C.P. 12(b)(1) and 12(b)(6), as applied by F.R.C.P. 56(b).

The trial Court may resolve factual disputes when considering the merits of a 12(b)(1) motion. *Moir v. Greater Cleveland Regional Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). When considering a 12(b)(6) motion, however, the Court must accept as true the plaintiff's allegations. *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 451-452 (6th Cir. 2003). This Court must view "the facts and any inferences that can be drawn from those facts . . . in the light most favorable to the non- moving party." *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1996)). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id*. (quoting Fed. R. Civ. P. 56).

Plaintiff's first two alleged causes of action are brought under the civil-remedy portion of 18 U.S.C. §248(c), more commonly known as the "FACE Act." The portion of the statute that Plaintiff alleges were violated are:

> **§ 248. Freedom of access to clinic entrances**
>
> **(a) Prohibited activities.**--Whoever--
>
> **. . .**

3

> **(2)** by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship;

18 U.S.C. §248(a)(2). Plaintiff does not raise (nor allege facts sufficient to support) a claim of property damage or destruction.

The plain language of the statue also speaks to its intended construction so as not to infringe upon the Free Speech rights of protestors:

> **(d) Rules of construction.**--Nothing in this section shall be construed--
>
> **(1)** to prohibit any expressive conduct (including peaceful picketing or other peaceful demonstration) protected from legal prohibition by the First Amendment to the Constitution;
>
> **(2)** to create new remedies for interference with activities protected by the free speech or free exercise clauses of the First Amendment to the Constitution, occurring outside a facility, regardless of the point of view expressed, or to limit any existing legal remedies for such interference;

18 U.S.C. §248(d)(1)-(2). Finally, the plain language of the "definitions" section of the statute shows that:

> **(3) Intimidate.**--The term "intimidate" means to place a person in reasonable apprehension of bodily harm to him- or herself or to another.
>
> **(4) Physical obstruction.**--The term "physical obstruction" means rendering impassable ingress to or egress from a facility that provides reproductive health services or to or from a place of religious worship, or rendering passage to or from such a facility or place of religious worship unreasonably difficult or hazardous.

18 U.S.C. §248(e)(3)-(4). There appears to be no published Federal case law interpreting the "religious worship" section of this statute, however, the plain language of the statute is the same for what constitutes a FACE Act violation for protestors at reproductive health care clinics. In the case of *People of New York v. Kraeger*, 160 F.Supp.2d 360

4

(N.D.N.Y. 2001), the Court set forth the elements required to prove a prima facie violation of the FACE Act:

> Thus, to establish a violation of FACE, a plaintiff must demonstrate that the defendant 1) engaged in acts of force, threats of force, or physical obstruction, 2) with the intent to injure, intimidate, or interfere with a person who 3) sought or provided, or is seeking or seeking to provide reproductive health services.

*Kraeger*, 160 F.Supp.2d at 372. For the instant case, "reproductive health services" would be replaced by language similar to "exercise of religious worship."

### COUNT I: PHYSICAL OBSTRUCTION TO A PLACE OF WORSHIP

The Mount Hope Church is a huge compound with numerous entrances, several parking lots, and a huge two-lane driveway lined with flags (**Exhibits E, J**). Plaintiff alleges that there were only "about ten" protestors scattered inside the church, intermingled with "over 700" church visitors on the morning of November 9, 2008. (Complaint, para. 25, 51). Likewise, Plaintiff alleges there were only "about ten" protestors outside the church. (Complaint, para. 38). If Plaintiff's allegations of fact are accepted as true, it is physically impossible that either the inside or outside protestors were able to physically obstruct a place of worship. Plaintiff took a video of the church service that morning, and provided it "exclusively" to The O'Reilly Factor television show, on which portions were aired on or about 11-20-08 during a nation-wide broadcast including interviews with Mount Hope Church representative Guy Richardson, and Austin Nimocks of the Alliance Defense Fund. The entire interview, including portions of the video of the event of November 9, 2008, can be found on the internet at the following link: **http://www.youtube.com/watch?v=yzFyPnvz-iI**.

Plaintiff's allegations that church-goers were somehow blocked by the ten outside demonstrators "preventing vehicles from safely and quickly merging from the highway onto the Church property," (Complaint para. 26) are physically impossible: The location map provided on Plaintiff's own website, as well as an actual street map, both show that the Church driveways do not merge onto either of the nearby highways. (**Exhibit J, K, L**).

For a civil violation of the FACE Act under the theory of obstruction to a place of worship, Plaintiff must prove that an <u>actual</u> physical obstruction took place <u>and</u> that physical force was used to cause said physical obstruction. *MacArthur v. San Juan County*, 416 F.Supp.2d 1098 (D. Utah 2005). For example, actual physical obstruction through use of physical force was found where abortion clinic protesters stood near car doors so that patients could not leave their cars, stood directly in front of patient and prevented her from approaching clinic while they attempted to give her literature, attempted to corner women against wall while they counseled her against obtaining reproductive health services and stood directly in front of clinic door and refused to move until security guard approached. *New York ex rel. Spitzer v. Cain*, 418 F.Supp.2d 457 (S.D.N.Y.2006). Additionally, under the plain language of the statute, the Plaintiff must plead facts that prove that the actual physical obstruction either "rendered impassible ingress or egress" or else rendered ingress/egress to the facility "unreasonably difficult or hazardous." 18 U.S.C. §248(e)(4).

In *Sharpe v. Conole*, 386 F.3d 482 (2d Cir. 2004), the Court granted summary disposition of a FACE Act claim where Plaintiff failed to allege actual physical

obstruction by physical force. The *Conole* court adopted the statutory interpretation of its District court in the underlying matter when it held:

> that to state a claim under the **FACE Act**, ***Sharpe had to allege, inter alia, that the defendants intentionally used force to obstruct access to a reproductive health facility*** "because the interfered-with person is or has been obtaining or providing reproductive health services, or in order to intimidate such person or any other person or class of persons from obtaining or providing reproductive health services." *Sharpe v. Conole,* 123 F.Supp.2d 87, 88 (N.D.N.Y.2000). In so holding, the district court rejected Sharpe's argument that the only intent required to state a claim under the **FACE Act** was the intent to obstruct and interfere. *Id.* at 89.

*Emphasis added*. *Sharpe,* 386 F.3d at 484. In the case at bar, the defendants inside the church clearly did not use <u>any</u> force, let alone obstruct any access, to the place of religious worship: the video shows the church goers were already inside the facility, seated, remained seated, and listening to what was going on. The defendants outside the church clearly did not use any force, let alone obstruct any access, to a place of religious worship: the photo and media reports are clear that the outside protestors were on a public sidewalk, and the affidavits of Defendants show that no obstruction took place. (**Exhibits A, C, D**).

None of the Defendants participating in the instant Motion used any physical force to obstruct entrance or egress from the Church building, the parking lot, or the driveway. (**Exhibit A**: Affidavits of Defendants). Additionally, none of the Defendants observed any of the other demonstrators causing any physical obstruction whatsoever. (**Exhibit A**). The video taken by the Plaintiff church itself during the sermon belies its written claims: it shows that church goers were already inside the church and in the middle of the sermon when the demonstration began. A portion of the video was shown on The O'Reilly Factor television show, showing that even during the very brief

7

demonstration, no church goers or church staff even attempted to leave their seats, let alone the building.  (http://www.youtube.com/watch?v=yzFyPnvz-iI).  When law enforcement (called by Plaintiff church) arrived on the scene, they found a handful of peaceful protestors on the public sidewalk.  (**Exhibits B, C, D**).

To compound the devastating effects of these inconvenient truths on Plaintiff's lawsuit, Plaintiff's complaint is devoid on its face of the factual allegations required to support this claim.  There are no factual allegations contained in Plaintiff's complaint that any weapons were displayed, used or even implied by any protestors.  There are no factual allegations in Plaintiff's complaint that any of the protestors made any verbal threats to any individuals, or to the group.  There are no factual allegations that there was physical contact between any protestors and any church visitors or staff.  Finally, Plaintiff's complaint fails to allege that <u>any</u> of the defendants used any actual physical force whatsoever to support its meritless allegations that actual physical obstruction occurred.

The video, television interview of Plaintiff's representatives, media reports, and the information obtained from the Plaintiff's own website show that there are no genuine issues of material fact to preclude summary judgment of this claim.  For all of the foregoing reasons, this Court must GRANT summary disposition of the First Cause of Action pursuant to F.R.C.P. 12(b)(1) and/or 12(b)(6), as applied by F.R.C.P. 56.

### COUNT II: INTIMIDATION AT A PLACE OF WORSHIP

The Second Cause of Action contained within Plaintiff's lawsuit must also fail as a matter of law.  The statute proscribes intimidation at a place of worship, but in its plain language requires that actual physical force, the actual threat of physical force, or actual

physical obstruction through the use of force, be *the cause* of the intimidation. 18 U.S.C. §248(a)(2). The courts interpreting the plain language of the statute have consistently held that an <u>objective</u> test applies: "**(3) Intimidate.**--The term "intimidate" means to place a person in *reasonable apprehension of bodily harm* to him- or herself or to another." 18 U.S.C. §248(e)(3). *U.S. v. Brock*, 863 F.Supp. 851 (E.D.Wis.1994), *affirmed* 82 F.3d 1370; *U.S. v. McMillan*, 53 F.Supp.2d 895 (S.D.Miss. 1999).

The Court in *People of New York v. Kraeger*, 160 F.Supp.2d 360 (N.D.N.Y. 2001), examined the meaning of what would constitute a "threat" sufficient to rise to the level of intimidation under the FACE Act language:

> FACE also prohibits threats of force or physical harm that are reasonably foreseeable to create apprehension in the listener of bodily harm to him or herself or another. *Cheffer v. Reno,* 55 F.3d 1517, 1521 (11th Cir.1995); *Scott,* 958 F.Supp. at 773. ***A "true threat" must be distinguished from protected speech.*** *Dinwiddie,* 76 F.3d at 925. ***"The court must analyze an alleged threat 'in the light of its entire factual context' and decide whether the recipient of the alleged threat could reasonably conclude that it expresses 'a determination or intent to injure presently or in the future.' "*** *Id.* Relevant context to consider are the national climate of violence at reproductive health care clinics, and assaults on physicians and clinic workers in the area or elsewhere in the nation. *See, e.g., id.; United States v. McMillan,* 53 F.Supp.2d 895, 905 (S.D.Miss.1999). ***Other relevant factors are whether the statement was uttered directly to the victim, the reaction of the victim and other listeners, whether the threat was conditional, and whether the similar statements were made to the victim in the past.*** *Dinwiddie,* 76 F.3d at 925 (holding that approximately 50 comments made to Planned Parenthood medical director warning "[R]emember Dr. Gunn (an abortion provider who had been murdered).... This could happen to you.... He is not in the world anymore.... Whoever sheds man's blood, by man his blood shall be shed" constituted threats of force).

*Emphasis added. Kraeger*, *supra* at 373. None of the language used nor alleged activity surrounding the complained-of protest rises can be considered intimidation in the legal sense of the FACE Act.

9

Plaintiff's complaint fails to allege facts that would place a reasonable person in reasonable apprehension of bodily harm. The affidavits of all Defendants taking part in the instant motion are consistent: none of the accused intimidated any church members, none of the accused prevented anyone from exercising their ability to practice their religion, none of the accused made any threats of force against any church members, none of the accused used any force against any church members, and none of the accused witnesses any other protestors use any force, or make any threats of using force, against any church members. (**Exhibit A**). The video taken by Plaintiff church itself of the inside protest is clear that no force was used, implied or threatened (verbally or otherwise). (**http://www.youtube.com/watch?v=yzFyPnvz-iI**). Similarly, media reports and law enforcement reports are clear that no violence was alleged nor observed at the scene. (**Exhibits B, C, D**).

A reasonable person would not find the chanting of "It's OK to be Gay," the distribution of paper fliers, and "about ten" people picketing on a sidewalk to be intimidating: it would not make a reasonable person feel reasonably apprehensive that bodily harm was going to occur to them. Particularly when, as shown in the video, all church attendees *were already inside the church* and seated before the protests outside and inside the church actually began. The video inside the church does not show mass chaos: none of the church attendees nor employees are running in fear to try and exit the building. They all continue to sit in their seats and watch. The Pastor remains calm throughout the very brief protest, and resumes his service by making a joke about it. (**http://www.youtube.com/watch?v=yzFyPnvz-iI**). The video, media reports and

affidavits show that no single church goers were targeted (or even spoken directly with) during either the inside or outside demonstrations.

Plaintiff attempts to argue that the information contained on the website of "Bash Back! News" is dispositive of the violent and threatening nature of the demonstration on November 9, 2008. These allegations are red herrings: no actual violence occurred during the demonstration, no physical force was used, no property was damaged and no arrests were made. If Plaintiff is attempting to somehow convince this Court that the church attendees were necessarily intimidated due to the content of the Bash Back! News website, it is greatly misguided: there are no allegations that any of the church goers even saw the website at issue prior to the church service at issue, nor that they had any pre-conceived notions about the term "Bash Back!"

The video, television interview of Plaintiff's representatives, media reports, and the information obtained from the Plaintiff's own website show that there are no genuine issues of material fact to preclude summary judgment of this claim. For all of the foregoing reasons, this Court must GRANT summary judgment on Plaintiff's second alleged cause of action, pursuant to pursuant to F.R.C.P. 12(b)(1) and/or 12(b)(6), as applied by F.R.C.P. 56.

## COUNT III: TRESPASS TO PROPERTY

Plaintiff's attempt to bring a civil claim for damages under Michigan common law for trespass to real property. This pendent claim must be examined under Michigan law. MCR 2.116(C) sets forth the recognized grounds for summary disposition of a lawsuit prior to trial. These include:

> (8) The opposing party has failed to state a claim on which relief can be granted.
> . . .

11

> (10) Except as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law.

MCR 2.116(C). Summary disposition of Plaintiff's Third cause of action is appropriate under each of these sub-rules.

In reviewing a motion for summary disposition under Michigan law, this Court must review all the pleadings, admissions, and other admissible evidence presented below in the light most favorable to the non-moving party. *Brown v. Brown*, 478 Mich 545, 551-552; 739 NW2d 313 (2007). Summary disposition under MCR 2.116(C)(10) is properly granted if no genuine factual dispute exists and the moving party is entitled to judgment or partial judgment as a matter of law. *Klein v. Kik*, 264 Mich App 682, 684-685; 692 NW2d 854 (2005).

As acknowledged by the Michigan Court of Appeals in *Adams v. Cleveland-Cliffs Iron Co.*, 237 Mich. App. 51, 602 NW2d 215 (1999), the only case relied upon by Plaintiff in support of their claim:

> Recovery for trespass to land in Michigan is available only upon proof of an unauthorized direct or immediate intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession. Once such an intrusion is proved, the tort has been established, and the plaintiff is presumptively entitled to at least nominal damages. Where the possessor of land is menaced by noise, vibrations, or ambient dust, smoke, soot, or fumes, the possessory interest implicated is that of use and enjoyment, not exclusion, and the vehicle through which a plaintiff normally should seek a remedy is the doctrine of nuisance. To prevail in nuisance, a possessor of land must prove *significant harm* resulting from the defendant's *unreasonable interference* with the use or enjoyment of the property. *Cloverleaf Car Co. v. Phillips Petroleum Co., 213 Mich.App. 186, 193, 540 N.W.2d 297 (1995)*, citing *Adkins, supra* at 304, 487 N.W.2d 715.

*Adams*, 237 Mich. at 222. Even when the facts of this case are examined in a light most favorable to Plaintiff, it cannot prove a prima facie case of common law trespass to land in Michigan.

Under Michigan common law, it is clear that a private land owner can relinquish some or all of its ability to control who enters its property through its own actions of permitting public use of said private property. The United States Supreme Court clearly established this precedent in the seminal holding of *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265: "Ownership does not always mean absolute dominion. The more an owner, for his advantage, opens up his property for use by the public in general, the more do his rights become circumscribed by the statutory and constitutional rights of those who use it." *Marsh* at 506. The *Marsh* holding has been adopted and applied in Michigan by *Michigan Supreme Court in Amalgamated Clothing Workers of America, AFL-CIO v. Wonderland Shopping Center, Inc.*, 370 Mich. 547, 122 N.W.2d 785 (1963), and its progeny.

A licensee is a person who is privileged to enter onto land by virtue of the landowner's consent. *Stitt v Holland Abundant Life Fellowship,* 462 Mich. 591, 596; 614 NW2d 88 (2000). That consent may be express or implied. *Alvin v. Simpson,* 195 Mich.App 418, 420; 491 NW2d 604 (1992). "Permission may be implied where the owner acquiesces in the known, customary use of property by the public." *Id.* However, this is not the only circumstance in which permission may be implied. Permission also may be implied by words or conduct. 2 Restatement Torts, 2d, § 330, p 173. Implied consent may arise where there exists conduct by the possessor "such as to give the other reason to believe that he is willing that he shall enter, if he desires to do so." *Alvin v.*

13

*Simpson,* 195 Mich.App 418, 420; 491 NW2d 604 (1992). ; *Leep v. McComber,* 118 Mich.App 653, 658; 325 NW2d 531 (1982).

The Mount Hope Church, by its own admission in its complaint (paras. 8, 25, 26), in its media interviews (The O'Reilly Factor, on or about 11-20-08, Internet link to video: http://www.youtube.com/watch?v=yzFyPnvz-iI), and on its website (**Exhibits F, G, H, I**), proudly and repeatedly discusses how its Sunday services are open to the general public. In his television interview with Bill O'Reilly, Plaintiff representative Guy Richardson repeatedly states that Mount Hope Church "is a very open door church," is "very outreach oriented," and that they "are an outreach church . . . for everyone." http://www.youtube.com/watch?v=yzFyPnvz-iI. Interviewer Bill O'Reilly indicates that their program spoke with both the prosecutor's office as well as the Michigan Attorney General's office, and that they "are not going to do anything" insofar as pursuing criminal charges against any protestors. *Id*.

Plaintiff's website also undermines its attempt to claim common law trespass by its own plain language. The introduction page proclaims: "Welcome to Mount Hope Church! . . .Whether you are just checking us out or you are a committed "Mount Hoper" you are welcome here." (**Exhibit F**). Plaintiff's "Statement of Purpose" asserts the importance of welcoming <u>all</u> people to attend their services: "REACHING: We are proclaiming the message of Jesus Christ to the spiritually lost in Lansing and in all the world through every available means." (**Exhibit G**). Church service days and times are prominently and publically posted on the website as well, with the warm invitation that they have "something for everyone," and asking folks to "Join us this Sunday – it'd make our day!" (**Exhibit H**). Additionally, the same "guerilla" tactic of going out in public,

uninvited, to try and educate others about their personal beliefs and opinions for which Plaintiff chastises Defendants, is also encouraged, organized and promoted through Plaintiff's own website. (**Exhibit I**). Plaintiff itself uses the website to recruit and organize others to take their message "out on the streets every week" in order to "reach the lost and the hurting. Hundreds are saved every year." (**Exhibit I**).

Plaintiff land owner did have the right to exclusive possession of the land on which Mount Hope Church is located. However, it voluntarily relinquished the right to exclusive use of the premises when it openly and very publicly (on its website and otherwise) invited the general public to come onto its land and attend its religious services. Additional guidance for interpretation of the common law of trespass in Michigan can be found from other areas of Michigan tort law examining persons who are injured while present on real property owned by a different party: "A "licensee" is a person who is privileged to enter the land of another by virtue of the possessor's consent." *See generally*: *Kosmalski v. St John's Lutheran Church*, 261 Mich App 56, 680 NW2d 50 (2004); *Wymer v Holmes*, 429 Mich 66, 71 n 1; 412 NW2d 213 (1987).

**Inside demonstrators:** The demonstrators inside the church entered the church legally as licensees, with the Plaintiff/owner's implied consent. While in the church, some of the demonstrators exercised their constitutionally-protected right to freedom of speech. Plaintiff's complaint does not allege that the content of the speech was of a nature that would remove it from First Amendment protections. The church members, "over 700" of them according to Plaintiff's complaint, were also licensees. When the demonstrators were asked to leave, they voluntarily and promptly left the building. There was no physical damage to the building. Plaintiff's attempt to assert that a pulled fire

15

alarm constitutes "physical damage" is misguided and without merit. The Affidavits of Defendants, coupled with multiple media reports investigating the event prove that <u>no</u> fire alarms were pulled. (**Exhibits A, B, C**). Plaintiff cannot make the factual argument that the noise or disruption of the yelling inside the building constituted trespass, as that action was intangible. *Adams*, *supra* at 222. Although law enforcement was called to the scene by an employee or agent of Plaintiff church, the church never complained about protestors inside the building, no arrests were made and no criminal charges for trespass or otherwise were pursued. (**Exhibits B, C, D**).

**Outside demonstrators**: Likewise, the common-law trespass claim against the demonstrators outside the church must also fail. The parking lot of the church is open to the public, without gates or security check points to determine who should and who should not be permitted to enter. The sidewalk is public property. Photos of the outside protest shown by the media, as well as Eaton County Sheriff reports cited by the media, all show that all demonstrators were on the sidewalk: <u>on public property</u>. (**Exhibits B, C and D**). To the extent that vehicles in which the demonstrators arrived at the church were parked in the church parking lot, they were there as legal licensees. Once the protest was over, the demonstrators left peacefully and voluntarily.

If the allegations contained in Plaintiff's complaint are taken as true by this Court, the following defendants were only outside of the church: **Major D-07, Debnar D-08, Troutman D-09, Krueger D-10, Keller D-11, Bollen D-12 and Merget D-13**. At the very least, based on the admissions of Plaintiff in their Complaint, this Court must grant summary disposition of the third cause of action as to those Defendants.

**Leave to amend not warranted**:  This Court should not grant Plaintiff leave to amend their pleadings, as such amendment would be fruitless and unjustified pursuant to MCR 2.116(l)(5). In *Ben P. Fyke & Sons v. Gunter Co.*, 390 Mich. 649, 213 N.W.2d 134 (1973), the Court stated it was not an abuse of discretion for a judge to deny leave to amend a complaint when any amendment would be futile.  MCR 2.625(A)(2) provides that "if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL §600.2591."  In turn, MCL §600.2591(1) provides:

> (1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action ***shall award*** to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

*Emphasis added*.  Defendants submit that this third cause of action in the instant civil lawsuit is frivolous, and was initiated against them for the primary purpose of harassing, embarrassing, and/or injuring Defendants.  MCL §600.2591(3)(a)(*i*).  Additionally, Plaintiff's third count is devoid of legal merit.  MCL §600.2591(3)(a)(*iii*).

## CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE the above-listed Defendants respectfully request that this Honorable Court GRANT their Motion in its entirety, ORDER that the Plaintiff's lawsuit (or any portion thereof) be dismissed with prejudice and GRANT Defendants the costs and attorney fees so wrongfully incurred.

Respectfully submitted,
*/s/ Tracie Dominique Palmer*
TRACIE DOMINIQUE PALMER (P 53555)
PALMER & ASSOCIATES, P.C.
Attorney for listed Defendants
615 Griswold, Ste. 1225

Detroit, MI 48226
(313) 963-1100 (voice)
(313) 963-5221 (fax)
tpalmer@palmerlawpc.com

## **CERTIFICATE OF SERVICE**

I state that on this date I filed the above-annexed document using the W.D. Michigan CM/ECF system which shall cause electronic notice of said filing to be served upon counsel of record for Plaintiff, and all other attorneys and/or parties of record.


Respectfully submitted,
*/s/ Tracie Dominique Palmer*
TRACIE DOMINIQUE PALMER (P 53555)
PALMER & ASSOCIATES, P.C.
Attorney for listed Defendants
615 Griswold, Ste. 1225
Detroit, MI 48226
(313) 963-1100 (voice)
(313) 963-5221 (fax)
tpalmer@palmerlawpc.com